# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

PAMELA A. GARRETT,      )
                                    )
         Plaintiff,        )
                                    )
        v.               )     Case No. CIV-11-453-SPS
                                    )
CAROLYN W. COLVIN,     )
Acting Commissioner of the Social  )
Security Administration,[1]      )
                                    )
        Defendant.    )

## OPINION AND ORDER

The claimant Pamela A. Garrett requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2]  Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on March 19, 1964, and was forty-six years old at the time of the most recent administrative hearing.  (Tr. 409, 516).  She completed her GED, and has worked as an assembler, cleaner (housekeeping), and manager (retail).  (Tr. 77, 459). She alleges that she has been unable to work since June 8, 2001, due to an on-the-job back injury.  (Tr. 72-73).

### Procedural History

On October 28, 2005, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.  Her application was denied. ALJ Michael A. Kirkpatrick determined the claimant was not disabled in a written opinion dated October 22, 2007.  (Tr. 14-24).  The Appeals Council denied review, but this Court reversed on appeal in Case No. CIV-08-277-SPS, and remanded the case for further proceedings.  (Tr. 471-482).  ALJ Michael A. Kirkpatrick held a second administrative hearing and determined that the claimant was not disabled in a written opinion dated June 22, 2010.  (Tr. 446-461).  The Appeals Council again denied review, so ALJ Kirkpatrick's June 2010 opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a), *i. e.*, she could lift/carry ten pounds frequently, stand/walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday. (Tr. 449). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled according to "the grids," *i. e.*, Medical-Vocational Rule § 201.28, for the period beginning June 8, 2001 and ending December 31, 2006, her date last insured. (Tr. 460).

## Review

The claimant's sole contention on appeal is that the ALJ erred by failing to properly evaluate the medical evidence, specifically the opinion of treating physician and rheumatologist Dr. Craig Carson. In addition to finding merit to this argument, the Court also finds that the ALJ failed to properly apply "the grids" in this case, and that the decision of the Commissioner should therefore be reversed.

The ALJ determined that the claimant's severe impairments consisted of degenerative disc disease and obesity. (Tr. 448). In 2000, the claimant fell off a ladder and injured her back while working. She continued to work until June 1, 2001, at which time she stopped due to the injury. She was largely treated through a Worker's Compensation claim. A CT scan of the lumbar spine revealed a small herniated disc fragment in the right neural foramen at L4-L5. (Tr. 133). Dr. Arden Blough examined

-4-

the claimant August 15, 2006, who found she had a whole person permanent partial lumbar impairment of 37% and recommended that temporary total disability be ended, that she should be considered to be at maximum medical rehabilitation, and that she should be rated for permanent impairment.  (Tr. 225).  In his opinion, the temporary and total disability ran from June 31, 2001 until June 21, 2004, at which time she began prolonged chronic pain management with Dr. Carson.  (Tr. 225).

On December 5, 2005, Dr. Carson, a board certified rheumatologist, submitted a letter to the Oklahoma Disability Determination Division, stating that he met the claimant June 21, 2004, that she had spondyloarthritis with uncontrolled pain, that pain treatment had been largely ineffective, and that a Health Assessment Questionnaire completed June 21, 2004 suggested "considerable disability."  (Tr. 150).  Dr. Carson's treatment notes from June 21, 2004 indicate that he found degenerative disc disease of the thoracic spine, question SI sclerosis, and first MTP osteoarthritis.  (Tr. 169).  Dr. Carson treated her at the Oklahoma Arthritis Center, along with his Physician's Assistant, Cindy Chtay. Treatment notes were variously signed by one or both of them.  (Tr. 175-185, 200-203, 226-229, 347-365, 380-404).  On May 2, 2007, Dr. Carson completed a Physical Medical Source Statement regarding the claimant's impairments, indicating that his findings related to June 2004 through May 2007.  He indicated that the claimant could carry three pounds if handed to her but could not lift it herself, that she was unable to stand in place, that she was unable to stand without severe pain, that she could sit thirty minutes with pain for a total of four hours a day, that she was required to lie down a large amount of

her day, and that she was unable to push/pull. (Tr. 366-367). He stated that she could occasionally climb three steps, reach, and finger, but could never balance, stoop, kneel, crouch, crawl, or handle. (Tr. 367). He stated, "She is clearly unable to do most of these physical activities. She is unable to sit through a 15-minute office visit without changing positions. Very slow for her to stand to relieve pain & sit again." (Tr. 367). In support, he referred to an elevated CK, mild degenerative disc T spine, inflammatory systemic disease likely triggered by a fall she took, extreme stiffness and pain of spine and large joints, and recent developing stiffness of hands. (Tr. 367).

On May 13, 2004, Dr. Alexander L'Heureux referred the claimant to a clinical psychologist for a psychological evaluation and possible pain management. Dr. David Johnson evaluated the claimant and recommended ten to twelve weekly sessions of individual outpatient pain management counseling, but indicated that even with therapy her prognosis would be guarded. (Tr. 341). When Dr. Johnson discharged the claimant from therapy on April 26, 2005, he indicated that she was at maximum medical improvement because "she is more accepting of her pain and understanding that she does not have to like it in order to accept it." Treatment notes also indicate that he worked with her to accept that there was not a cure for her pain. (Tr. 343-345).

The ALJ summarized the claimant's testimony and medical records, spending a great deal of time in his opinion discrediting Dr. Carson's opinion. The ALJ found that Dr. Carson's MSS was a "dramatic overstatement," and declined to give it controlling weight because it was not well-supported by medically acceptable clinical findings and it

was inconsistent with other substantial evidence in the record.  (Tr. 451).  The "dispositive" reason he rejected Dr. Carson's opinion was that he could not find any evidence that Dr. Carson examined the claimant before her date last insured, and thus viewed the MSS as the work of Ms. Chtay, the physician's assistant.  (Tr. 452).  He also rejected the MSS as based on the claimant's own reports, which he did not find credible.  (Tr. 453).  The ALJ discussed the factors set forth in 20 C.F.R. § 404.1529 and *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), as well as the criteria set forth in Soc. Sec. Rul. 96-7p.  The ALJ recited Dr. Strom's findings, but neglected to recite Dr. Strom's notation that he did not have access to the claimant's multiple physicians' records or any of the MRIs that had been performed.  (Tr. 195).  He then stated, "[c]onsidering that the claimant's alleged disability onset date is June 8, 2001, more than six years ago, this is a relatively thin medical exhibit file, as the claimant has actually sought medical treatment for her allegedly disabling impairments relatively infrequently."  (Tr. 458).  The ALJ made no mention of the consistent records finding her temporarily totally disabled for the majority of the insured period (June 2001 to December 2005).  (Tr. 186, 258-260, 271, 303, 307, 311, 315, 317, 320, 322, 324).  As to the claimant's pain, the ALJ recited boilerplate language stating, "The objective medical evidence in this case establishes that, contrary to the claimant's allegations of disabling pain, she has exhibited relatively mild symptoms.  Severe pain will often result in certain observable manifestations, such as loss of weight due to loss of appetite from incessant pain, muscular atrophy due to muscle guarding, muscular spasms, the use of assistive devices, prolonged bed rest, or adverse

neurological signs." (Tr. 458). He then stated that the medical evidence was not consistent with her alleged impairments, found her not credible, and found her capable of sedentary work. (Tr. 459).

The medical opinion of a treating physician is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) [quotations omitted]. When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by considering the following factors: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship. (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Although the ALJ was not required to give controlling weight to Dr. Carson's opinion, the ALJ was required to evaluate it for controlling weight as to the claimant's functional limitations expressed.  Dr. Carson expressed an opinion as to the claimant's functional limitations, but the ALJ rejected it because he refused to believe that Dr. Carson's signature on the medical records meant that he actually examined the claimant, rather than Ms. Chtay, and because he did not find the claimant herself to be credible. Importantly, he found Dr. Carson's opinion inconsistent with the medical evidence as a whole, while wholly failing to address the multiple opinions that the claimant had been classified as temporarily totally disabled.  The ALJ erred when he failed to discuss *all* of the evidence related to the claimant's impairments, and only cited evidence favorable to his finding of nondisability.  *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004); *Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527."), *quoting Watkins,* 350 F.3d at 1300.

Notably, the ALJ was also not required to give controlling weight to the multiple opinions in the record stating that the claimant was temporarily totally disabled, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or

decision about whether you meet the statutory definition of disability . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), but he nevertheless *was* required to determine the proper weight to give those opinions by applying the factors in 20 C.F.R. § 404.1527. Instead, the ALJ simply neglected to discuss them at all.  *See Miller v. Barnhart,* 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("The [ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner."); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.").  The ALJ failed to do so.

The ALJ further erred in applying "the grids" to determine the claimant was disabled despite her significant nonexertional impairment, *i. e.*, pain.  "The grids" are rules promulgated by the Commissioner for determining disability based on a claimant's RFC category, age, education and work experience.  *See Channel v. Heckler,* 747 F.2d 577, 579-80 & n.3 (10th Cir. 1984) (per curiam).  An ALJ may rely conclusively on "the grids" to find that a claimant is not disabled if: (i) the claimant has no significant nonexertional impairment; (ii) the claimant can do the full range of work at some RFC level on a daily basis; and (iii) the claimant can perform most of the jobs in that level.  "Each of these findings must be supported by substantial evidence."  *Thompson v.*

*Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993).  Thus, use of "the grids" is inappropriate

if a claimant has a nonexertional impairment, unless the evidence supports a finding that

such impairment is insignificant.  *Id.* at 1492; 20 C.F.R., pt. 404, subpt. P, app.2, §

200.00(e).

     "Pain, even if not disabling, is still a nonexertional impairment to be taken into

consideration, unless there is substantial evidence for the ALJ to find that the claimant's

pain is insignificant." *Thompson*, 987 F.3d at 1490-91*, citing Ray v. Bowen*, 865 F.2d

222, 225 (10th Cir. 1989) and *Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988).

In assessing allegations of pain, an ALJ "must consider (1) whether Claimant established

a pain-producing impairment by objective medical evidence; (2) if so, whether there is a

'loose nexus' between the proven impairment and the Claimant's subjective allegations

of pain; and (3) if so, whether, considering all the evidence, both objective and

subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371,

1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).

     In this case, there was objective medical evidence indicating that the claimant has

a pain-producing impairment, *i. e.*, degenerative disc disease.  The ALJ was thus required

to consider the claimant's allegations of pain and the extent to which they were disabling.

The ALJ specifically found that the claimant's pain was not disabling, that the record

lacked evidence of specific symptoms, and that the claimant was not credible, then

reaching a boilerplate conclusion that the "claimant's statements concerning the intensity,

persistence, and limiting effects of these symptoms are not entirely credible."  (Tr. 15).

This finding was in direct contrast to the year of therapy directly related to her pain. *See Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) ("[B]oilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible."), *citing Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001); *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) ("The ALJ's purported pain analysis is improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence or explain how Mrs. Carpenter's repeated attempts to find relief from pain, and all the drugs she has been prescribed for pain, resulted in a conclusion that she is unlimited in any regard by pain or the side effects from her pain medication.") [citations omitted].

The ALJ thus failed to account for the claimant's pain (disabling or otherwise) in formulating his RFC and determining what work, if any, she could perform with her level of pain. *See, e. g., Harrison v. Shalala*, 28 F.3d 112, at *5 (10th Cir. 1994) (unpublished table opinion) ("If the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry. The [Commissioner] must show that jobs exist in the national economy that the claimant may perform *given the level of pain [he] suffers*.") [citation omitted]. This would ordinarily require the opinion of a vocational expert, *see, e. g., id.* at *5, but ALJ did not consult a vocational expert at either of the two administrative hearings held. Additionally, the ALJ took on the role of physician when he cited specific symptoms he expected to see. *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996) ("The

ALJ may not substitute his own opinion for that of claimant's doctor."), *citing Sisco v. United States Department of Health & Human Services*, 10 F.3d 739, 743 (10th Cir. 1993) *and Kemp v. Bowen*, 816 F. 2d 1469, 1475 (10th Cir. 1987).   Because the ALJ failed to properly evaluate Dr. Carson's opinion or to account for the claimant's pain, the decision of the Commissioner should be reversed and the case remanded for further analysis of the claimant's allegation of pain by the ALJ.  If this results in adjustments to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

### Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of September, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma